Good morning, Your Honors, and may it please the Court, James Chavez on behalf of Mr. Munoz. This appeal raises a single issue, which is whether the government, at sentencing, breached the plea agreement by failing to provide a united front, thereby depriving Mr. Munoz of the benefit of his bargain. The critical moment in this case is when the district judge took the bench and told the parties that he, Judge Huey, he was not going to follow the recommendation of the parties. He was going to give a sentence above the 37-month recommendation that was made in the papers by the government counsel. And the breach occurred at the sentencing hearing in four ways. The calendar assistant, Mr. Christopher Alexander, who's a 20-year veteran of the Department of Justice. The first thing he did was he distanced himself from the recommendation. He explained it, made clear to the court that this was somebody else's case that was clear from the papers. But it was.  It was. Yes, Your Honor. The sentencing memorandum was filed, there was a sentencing memorandum in this case filed by the assigned prosecutor, Mr. Green. And also the actual agreement was not for 37 months. I'm sorry? The agreement was not for 37 months. So, even within the agreement, there was a discretionary decision made to make it, I think it was 37 to 46 months, and they decided to, the prior person decided to recommend the bottom of the guidelines, so we needed some explanation for that. Yeah, the 37-month sentence was something that we signed the plea agreement, and then there was a number of months until the sentencing hearing happened, and it was consistent advocacy on my behalf that, for the low-end recommendation. But there was no agreement to that. Huh? There was no agreement to that. No, there was no agreement. And you were asking for 24, right? Well, and this is why I say that the critics, let me answer that. Yes and no, if I may. Okay, what's the no part? The no is not one single time during the sentencing hearing did I ask the court for a variance. At no point during the sentencing hearing did I ask the court for 24 months, at no point in the sentencing hearing. Had you filed something? I had filed, yes, your honor. That doesn't count? It does count. And the plea agreement says defendant may request additional downward adjustments, which you did, right, in your written submission, yes? Yes, your honor. And then it says the government will oppose any downward adjustments. So doesn't the government have the right, if you've decided to make a request for a adjustment that you may or may not make, and the government explicitly reserves the right and says it will oppose, don't they have the right to speak in support of that? Yes, your honor, but that's why I began by pointing the court to the critical moment at the sentencing hearing where the game changed, if you will. The sentencing judge told the government, I'm not giving 37 months, I'm going above that. And then you, I guess it was you, got up and, I gather you were the lawyer for the defendant at the hearing. I'm sorry, my hearing is not- You were the lawyer for the defendant at the hearing? I was, your honor. And you got up and said, in no uncertain terms and several times, that there was a shocking amount of an amazing amount and so on, right? And then what the government lawyer did was get up and say the same thing actually in a milder form than you had said it. Yes. And you said it presumably because the district court, you didn't want to be countering the district court's observation, you wanted to get some credibility and presumably that's what the government was doing too, or at least isn't that a fair reading? You didn't want to appear to be countering the district court's observation as to the large amount of drugs and you had just done the same thing. I would disagree, your honor. And here are the reasons. The reasons is because it is true, the judge told us at the very beginning of the hearing, the reason he was going to go above was because of the quantity. And so I addressed my comments directly to that concern. Where you said you were shocked by the amount. Mr. Munoz was shocked, my client was shocked, and I was shocked. I said both of us. As Judge Berzon was saying, you said it twice, you were shocked by the amount and you said obviously it was an incredible amount of drugs, it was a ton of meth, right? Yes. And then the government lawyer said essentially the same thing but less of it. So how could that be a breach of the agreement? Yes, and I guess what's important is that the government failed to present any mitigating evidence in this case. They didn't present, Mr. Alexander at the sentencing hearing did not say anything mitigating about Mr. Munoz. I directed my comments to the court's concern. I would be not doing my job if I wasn't centering on what the court wanted to talk about. But then I talked about how it was shocking to my client. He did not know he was smuggling 2,000 pounds of drugs. I was attempting to mitigate that concern. He got $12,000, right? He didn't get $12,000. He presumably would have gotten $12,000. But that was what the number was? Yes. And the judge said that's above market. That is above market for, I would disagree with that statement, but that is what the judge said. I mean, it just seems that you're asking the government's attorney to walk a very fine line because the plea agreement expressly allows them to oppose the at least written request for further downward variance than what was agreed to. But then also asking them to, so they're going to oppose that, but then somehow ask them to also defend against what the court is indicating, which is to go above what was agreed to by arguing against themselves, essentially. I mean, it just seems like if that's what you want, then maybe you should ask for something lower than what was in the plea agreement or negotiate a different plea agreement. There's always a strategy with your judge. Judge Huey was a new judge at that point. We were all learning his sentencing practices. Had I the knowledge I knew about his sentencing practices, I would have recommended 37 months absolutely certainty. He's a very nice man. I practiced with him for many years. A lot of respect for Judge Huey, but I think he got this one wrong. The failure here is the government failed to present any mitigating evidence. So essentially, you're backing off the fact that there was a new person, and you're backing off the fact that there was some repetition of the amount, and now you're saying the problem is that they didn't present mitigating evidence. That's basically what we're down to. I'm not back. If I misspoke, I did not mean to back off any of those arguments, Your Honor. It is a problem that the whole problem is that Mr. Alexander didn't stand by Mr. Green's decision in this case when the court said he was going to give more than 37 months. AUSA Alexander said absolutely nothing to convince the court that the court should give 37 months. But he did say, after he was accused of breaching, there's no breach. The United States is recommending lower than what it could have recommended, which would have been a within-guideline range sentence, the CDR 15. So at the end of the day, to be clear, the United States is recommending 37 months. The judge says, I want to make sure that's what you're saying, right? That's your recommendation, right? Yes. So I'm missing it here. Yes. The prosecutor, Mr. Alexander, said the 37-month recommendation was more than fair. The other really important fact that he said more than fair, quote, that's from the quote, he said the recommendation was more than fair. That undermines it. Two, he made the recommendation.  As to that, isn't it relevant that he wasn't bound by the 37 months? He could have at that point come in and said, actually, I reflect that it should be 46 months. So from that point of view, it was more than fair, more than even what they had promised. The court had said it was going to give a sentence above what the parties were recommending. The game at that point was to convince the court to follow the recommendation of the  And Mr. Alexander did nothing. And I'd like to reserve the last minute of my time. Thank you. All right. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the court, Andrew Chang for the United States. The prosecutor below did not breach the plea agreement. This is a plea agreement that contemplated substantial advocacy between the parties. And it's a plea agreement that authorized substantial advocacy between the parties. What the prosecutor said in this case was tethered to that important provision. And that's why his comments were permissible. I think what's the issue that's before the court is whether this prosecutor went too far like the prosecutor did in Farias Contreras. But by any measure, that answer is no. The prosecutor's statements in this case have to be viewed in context of what the defense had presented to the judge before he even went up to the podium. And in this case, the defense unequivocally filed a sentencing memorandum that requested a variance to 24 months in custody. And then when it was the defense's turn to speak at sentencing, in response to the judge's tentative, the judge did not say that he was going to sentence above 37 months. The judge said that that was his tentative inclination. By no means was it final. When the defense heard that, the defense amplified its arguments from its sentencing memorandum in a number of significant ways. First, the defense introduced the defendant's family that was sitting in the courtroom, introduced that family to the judge, and then stated several times that the defendant has incredible family support. That is a significant sentencing argument. Because for judges who are inclined to take a chance on a first-time offender, they want to see proof of family support. And the defense counsel in this case was giving that to the court. The defense in this case also advocated for the defendant's several equities, including his relationship with his daughter, the fact that he had no criminal history, the fact that he had steady employment. He also talked about how the defendant- What's the relevance of all this? I'm sorry, Your Honor. What's at issue here is the government's behavior, not the defense's. Well, the government was responding. The government was responding. But you didn't respond to any of that. You didn't say he didn't have support of his family, or it shouldn't matter that it was a first offense, or any of that. You didn't respond to any of those points. Well, he was responding to the fact that the defendant was asking for a below-guideline sentence.  And, you know, sort of in context, the government really didn't say that much at all. If you kind of look back and look at what the government was saying to the court, it was a 30-second response that didn't even cover, you know, half a page of a sentencing transcript. And what he did was very quickly summarize his colleague's recommendation, presented it to the court by couching it under the term, we, which indicated that he embraced that recommendation in one sentence, in a single sentence, he reminded the court about the numerical quantity of the drugs, and then he moved on to make the recommendation. There was no pejorative editorializing in this case, there was no, you know, divulging of internal office discussions that may have suggested dissent. He didn't fail to make the explicit recommendation that the government was promising. He did so three times, and as the court has mentioned, he did so by making the lowest possible recommendation that the government could make. And so under these circumstances, I don't think that there's any question that his purpose was just to oppose the variance request, and that was proper. One last thing I want to add is that the sentencing judge in this case made an explicit finding about the prosecutor's intent, and I think that's important because when we're talking about implicit breach, for us, Contreras is telling the court to examine things like, you know, good faith, intent, purpose. And the district judge in this case is the, you know, the only judge involved in this case who had the advantage and the benefit of not just hearing what was said. Although we, I mean, the district court did say there was no breach here, but basically don't we review that finding de novo? Well, this court has not been entirely consistent in applying the standard review. Sometimes it's applied de novo, sometimes it's applied clear error. I would submit that under either standard of review, this court can affirm. We don't have to reach that question. You don't have to reach it, but I just want to make the point that this is a case where I think clear error can be applied just because the district court made that finding about the prosecutor's intent. And that is, you know, a question of fact that is usually reserved for the... Is intent the question as to breach? When it comes to... A breach of contract is usually not an intent question. Well, I think when it comes to implicit breach, I think intent is relevant. And I think Farias Contreras said that because it directed lower courts to examine things like good faith. Yeah, I'm not sure that here where the argument is the words were a breach and we're looking at whether the words were a breach, I'm not sure it would be relevant whether the prosecutor... What the prosecutor intended, because there's no question what he said. But in any case... If that's the case, Your Honor, then I would welcome a de novo review on the record of this case. And I think... The one thing the government didn't do was explain why it was giving this recommendation. Just kept saying this is our recommendation, but it never really explained why it was recommending quite a low sentence for the crime. Well, I don't think that there's anything in the plea agreement that required the government to explain why he was giving a low sentence. And that was true in the sentencing memorandum, too. The sentencing memorandum just said there are mitigating factors. It didn't say what they were. Well, I think, you know, if the sentencing memorandum said that there was mitigating factors, I think that it was referring to some of the things that was brought up in the PSR. But I think if you're talking about the government sentencing memorandum, it did give an explanation for why it was giving... No, the only explanation was there are mitigating factors. No, the explanation was the government was anticipating that the defense would ask for an even lower sentence. Well, I know, but it didn't explain why it was recommending 37 months. It was recommending 37 months in anticipation of the fact that the defendant was going to request even less. And the prosecutor was asking the judge to not go below 37 months. As for, you know, I agree that there's a... But once the judge said, I'm going to go over 37 months, I'm going to go to, what, 15 with 46 or something, or 46, I can't remember what he said. But whatever it was, at that point, it did become relevant to know why the district... If you were... The prosecutor here probably sufficiently did what he was supposed to do, but he certainly didn't try very hard to persuade the judge that 37 months as opposed to what the judge was recommending. He said nothing that would have caused the judge to accept the 37 months rather than what he... Rather than his tentative, basically nothing. Well, I think that's true. The prosecutor did not say much in this case, and, you know, I don't see how a prosecutor who really doesn't say too much can be accused of violating the plea agreement. What the prosecutor did here was the court's inclination that it may sentence higher. But then he also heard the defense make an argument that was consistent with the sentencing memorandum. Also, it's a... I'm sorry. I was going to say, I was going to ask your friend across the aisle about this, but I might as well ask you as well. While I read at page 11 to 12, Mr. Alexander says, the assigned prosecutor took into consideration the defendant's early disposition in this matter, elected to grant a minor role adjustment safety valve, and despite the plea agreement providing for a within-range sentence, went to the low end, recommended 37 months in custody. As the court noted, this was an incredible amount of controlled septence, but at the end of the day, we feel that the 37 months is more than fair, given that this individual did accept responsibility in this matter. It's maybe not the most fulsome explanation, but it seems to me that they're saying we think 37 months is fair, despite the large amount, because he accepted responsibility. I mean, I guess to me, I read that as some defense of the 37th month recommendation at the low end. Yeah, and I think that's right, Your Honor. He didn't say much, but he did say that. He did say that the defendant had accepted responsibility, and he did say- And the minor role. I think he mentioned the minor role, too. I think that was all to get to the range, the guideline range, and then the low end was the acceptance of responsibility. Correct. Okay. Correct. He did say that, and then he did say that that was a more than fair recommendation, because he could have recommended higher, but he didn't, and the reason why he used the word more than fair is because he just didn't want the judge to go any lower than 37 months. All right. Thank you, counsel. Thank you, Your Honor. All right. You have a little bit of time left. Your Honor, Mr. Munoz was entitled to a united front at that sentencing hearing, and that was especially important in this case where the judge took the bench, and the first thing he said, I'm not giving either of these sentences. I would like to focus- I would like to- A case that hasn't come up during this is Camarillo-Tejo, which is a 2001 decision written by the late, great Betty Fletcher, and it is specifically about the government's failure to recommend the fast track plea agreement and explain the fast track adjustment here. And that is an important thing that shows exactly the prosecutor's mindset at the sentencing hearing. The judge declined to give four levels for fast track, only gave two. The government failed to object to that, even though they were obliged to recommend the four levels. They did at the beginning of the hearing. And then when I objected to the court not giving the four levels, the prosecutor did not join in that recommendation, nor- or in that objection, nor did they defend it. And so I think that that reflect- I think that that is almost an explicit breach of the plea agreement here, and shows the level of advocacy that was happening, that was next to nothing in this case on behalf of Mr. Munoz in the face of the district court telling the parties it was not going to give 37 months. At no point, that is why, after I gave my sentencing pitch, as is reflected in the record, I went over and whispered into Mr. Alexander's ear- And Counsel, why don't you conclude? United Front. Because that's what this court has held, is the standard. It's not what happened here. And so, Your Honor, the government can oppose a variance, but not by undermining its own recommendation, abandoning mitigation completely, and distancing itself from the plea agreement. The government- All right, we thank counsel for their arguments, and the case just argued is submitted.
judges: BERZON, BENNETT, SUNG